THE DAVIS SEWING MACHINE CO. v. MCGINNIS ET AL.

1. **Contract**: VENDOR AND VENDEE: DEMAND. Where, by the terms of a contract between vendor and vendee, the purchase price of merchandise was to be paid in cash or the notes of third parties, at the option of the vendee, the indebtedness of the vendee accrued upon the delivery of the merchandise, and a demand for the notes need not be shown to entitle the vendor to a right of action thereon.

2. **Guaranty**: INDORSEMENT. Where the guarantor undertook to insure the payment of all indebtedness of his principal to the guarantee, whether consisting of accounts, notes, indorsement of notes or otherwise, the guarantor was held to be liable upon notes which his principal transferred to the guarantee, with no other indorsement than simple words of guaranty.

3. ———: NOT TO BE EXTENDED. If, under the contract of guaranty, the guarantee took other or different notes than those provided for in the contract, or gave additional time for payment to the principal, or waived any material condition on which payment was to be made, the guarantor was released from liability.

4. **Evidence**: BOOKS OF ACCOUNT: VENDOR AND VENDEE. While the testimony of a witness, in an action upon an account, may not be competent when he shows that his only knowledge of the transaction between the parties was based upon the plaintiff's books of account, yet he may testify to the receipt of orders from the defendant for merchandise and such orders themselves are admissible.

5. **Guaranty**: NOTICE BY GUARANTOR. A request by the attorney of the guarantor that a copy of the bond be sent him with authority to sue both principal and guarantor is not such a compliance with section 2108 of the Code as will discharge the guarantor if the guarantee does not bring the suit within ten days thereafter.

*Appeal from Jasper District Court.*

FRIDAY, APRIL 6.

ACTION on a written contract, the material portions of which are as follows:

"It is agreed that all sales of sewing machines, parts thereof or accessories thereto, which the Davis Sewing Machine Company, of Watertown, New York, parties of the first part, shall make to John W. McGinnis, of Greencastle, Jasper county,

Iowa, parties of the second part, shall be upon the terms and conditions following, unless it shall be otherwise, in writing, hereinafter agreed during the continuance of this contract:

\* \* \* \* \* \* \* \*

" *Third.* Said Davis Sewing Machine Company will, during the continuance of this agency, sell its machines and attachments to said second party on four months' time at a discount of 35 per cent from the regular retail prices of the machine and attachments, and agree to accept payment for the same in manner following, to-wit:

" 1st. Said party may make a deduction of 15 per cent from net amount of all bills paid in full by cash within thirty days from date of such bills.

" 2d. Said Davis Sewing Machine Company will also accept such notes as second party may receive from his customers in payment of any invoice, provided such notes fall due, on an average, six months from date of such invoice.

" 3d. Said Davis Sewing Machine Company will accept said second party's customers' notes, due, on an average, nine months from date of invoice, in payment of same; provided such notes shall be made with interest at six per cent for all time in excess of six months. Provided always, that all such notes shall be taken on blanks furnished by said Davis Sewing Machine Company, and indorsed and guaranteed by said second party, and shall be made payable at some bank or at the office of some express company."

\* \* \* \* \* \* \* \*

Said contract was executed by the plaintiff and McGinnis, and on the back thereof, signed by the other defendants, was the following:

" For value received, I hereby guarantee to the Davis Sewing Machine Company, of Watertown, New York, the full performance of the foregoing contract on the part of John W. McGinnis, and the payment by said John W. McGinnis of all indebtedness by account, note, indorsement of notes or otherwise, which may arise under this contract from said J. W. McGinnis to the said Davis Sewing Machine Company, to the amount of two thousand dollars."

The plaintiff also sought to recover of the defendants the amount of certain specified notes, which it was claimed McGinnis had guaranteed and transferred to the plaintiff, under the terms of the contract.

The answer set up the several matters as defenses discussed in the opinion. There was a trial to the court, a finding of facts made, and judgment against McGinnis and in favor of the other defendants. The plaintiff appeals.

*Ryan Bros.*, for appellant.

*S. N. Lindley*, for appellees.

SEEVERS, J.—I. It is insisted there can be no recovery against the guarantors on the contract, because, under its terms, any and all indebtedness was payable in notes guaranteed by McGinnis, and that no demand for the notes has been shown. In this view we cannot concur.

1. CONTRACT: vendor and vendee: demand.

The third clause of the contract fixes the time when the machines are to be paid for, and if the contract stopped there evidently the meaning would be that the indebtedness should be paid in four months in cash. In other words, there was to be a credit of four months. It is then provided that if cash is paid in thirty days from the date of the bills there was to be a certain discount made. So far, it is entirely clear only cash was contemplated. Then follows the further provision that the plaintiff "will also accept such notes as second party (McGinnis) may receive from his customers in payment of any invoice." That is to say, McGinnis might, if he saw proper, pay in notes of a certain description, and plaintiff was bound to accept them. But this option to pay in notes contemplates an offer or tender by McGinnis, not a demand for them by the plaintiff. The latter could not have compelled a payment in notes; why, then, should there be a demand on McGinnis to do what he could not be compelled to perform? Such useless form and ceremony was not required. The indebtedness was incurred by the delivery of the machines, which, under the terms of the contract, could

be discharged either in cash or notes, at the option of McGinnis. If he failed to do either, plaintiff's right of action was complete without a demand.

II. The guarantor defendants guaranteed the "payment by said John W. McGinnis of all indebtedness by account, note, indorsement of notes or otherwise." The notes on which plaintiff seeks a recovery of the guarantors were guaranteed by McGinnis, as follows: "For value received I hereby guarantee the prompt payment of the within note." The notes, however, were not otherwise indorsed. But we think what was done was clearly within the defendants' guaranty. It matters not how the notes were transferred, if McGinnis bound himself in any way to pay the same the guarantor defendants were bound to make such contract good. The defendants agreed to pay all indebtedness of McGinnis under the contract, without qualification as to the form or manner McGinnis saw proper to bind himself.

<span style="float:left; font-variant:small-caps;">2. GUARANTY: indorsement.</span>

The word "otherwise," as used in defendants' guaranty, taken in connection with what precedes it, must have this broad and general interpretation, and such evidently was the intent of the parties.

III. There were two classes of notes plaintiff agreed to accept, and the payment of these only were guaranteed by the defendants. If the plaintiff accepted in payment notes or property not contemplated by the contract the defendants were not bound by the terms of their guaranty to make the same good to the plaintiff, for the amount or value for which the same were taken. The two classes of notes were such as McGinnis might receive from his customers "in payment of any invoice, provided such notes fall due on an average six months from the date of such invoice," or such notes payable in nine months from date of invoice, with interest at six per cent for the time in excess of six months. Three of the notes on which a recovery is sought were payable six months after date, five in twelve and two in nine, as shown by the petition and amendment thereto. The court found "that J. W. McGinnis from time to time took from his customers the following promissory notes in words and figures

<span style="float:left;">3. ——: not to be extended.</span>

as follows, to-wit:" The abstract then states "(Here is inserted the eight notes set out in petition)," "and turned them over under the contract as and for payment to them to the amount due thereon. But at what time they were thus turned over to plaintiff and received by it does not appear."

It will be seen there were ten notes referred to in the petition and amendment, nine being in the former and one in the latter, while the finding of the court refers to but eight of the notes set out in the petition, but we have no means of determining which of the notes named in the petition are the ones referred to by the court in the finding, as the abstract fails to show that all the evidence is before us. The court below was unable to determine when the notes were turned over under the contract. Under this state of facts it is impossible for us to say that the defendants are liable for the amount of said notes. We are unable to determine that these notes fall within either of the classes defendants bound themselves to pay. It will be remembered the notes were to become due on an average within six or nine months from the date of the invoice. The fact they were payable within those periods does not necessarily show this, and for aught that appears four months from the date of the invoice may have expired before the date of the notes. Nor can we determine as to the average.

The contract contemplates the average time shall not exceed six or nine months on the notes turned over in payment of each invoice. It was not intended that McGinnis should order goods every month for a period of six months, and then on the date of the last order or invoice pay for the whole in notes. If Ely's deposition be taken as true McGinnis ordered on May 4th, 1872, $118.75 worth of goods; for these an invoice was undoubtedly sent him. Now he could pay for this invoice in the specified notes, and so on as to each invoice. Before the defendants can be held as guarantors of the notes they must be of the character guaranteed. Being sureties they are only bound to the extent of their contract. If the plaintiff took other and different notes than was provided by the contract, or gave additional time to McGinnis in which to make payment, or waived any of the material conditions on which

payment was to be made, without the knowledge of these sureties, it did so at its peril, and the defendants are not liable.

IV. The defendants moved to suppress the deposition of one Ely on the ground the cross-examination showed that his only knowledge was obtained from the plaintiff's books of account, which motion was sustained. The witness was plaintiff's assistant manager, book keeper and cashier at Chicago, and among other things testified to by him was the state of the accounts between plaintiff and McGinnis. The account was shown by exhibit "F" attached to his deposition, and contained the debits and credits. In his examination-in-chief the witness stated the condition of the accounts in clear and positive terms, and the date of each invoice and the amount or value of the goods sent is clearly stated. On cross-examination the fact was disclosed that all machines and other goods sent McGinnis were so sent in accordance with certain orders purporting to have been given by McGinnis, and such orders were attached to the deposition. The suppression of the deposition had the effect to exclude the orders also. We are unable to see why so much of the account as was based on the orders should have been suppressed. The orders showed the goods and the prices thereof which McGinnis directed to be shipped to him, and constituted very nearly the entire amount of the debit side of the plaintiff's account, and, if proved to have been given by McGinnis, were clearly admissible in evidence, as also was the account based thereon. As to such items the knowledge of the witness was not derived from the books of the plaintiff. The knowledge of the witness as to the credit side of the account seems to have been obtained from plaintiff's books, but it is hardly to be supposed defendants seek to have this suppressed. It was time enough for plaintiff to prove the orders were given by McGinnis when their admissibility was objected to for that reason. The fact that the existence of the orders was first disclosed on cross-examination, we do not deem material, because, if for no other reason, the motion to suppress was not based on the ground that the answers of the witness were not responsive. We know of no rule which will

<div style="margin-left:2em">
4. EVIDENCE: books of account: vendor and vendee.
</div>

not permit a party to avail himself of evidence, though it be elicited on cross-examination.

V. Defendants moved to suppress portions of the answers to interrogatories 6 and 8 in chief in the deposition of Walker, plaintiff's shipping clerk, which motion was sustained. As neither interrogatory 6 or answer thereto is contained in the abstract we have no means of determining whether the court decided the question correctly or not.

Interrogatory 8 and answer is as follows:

"State whether or not any statement of account shows fully how much is due from defendants. If not, state in what else defendants, or either of them, are indebted, and state fully all the transactions between plaintiff and either of defendants.

"*Ans.* I have no way of knowing the balance due. [I only know that said statement of account, marked exhibit F, shows fully and truly the goods and merchandise shipped by plaintiff to defendant, McGinnis, the time when shipped and their value respectively as indicated in said exhibit.]"

The objection made to the foregoing answer was that the portion contained in brackets was not responsive to the question, and on this ground the motion was sustained. In this ruling there was error. The latter clause in the question is quite broad, and a part of the transactions between plaintiff and McGinnis was the shipment of the goods, and this seems to us to be directly responsive to the interrogatory.

On the same ground the defendants moved to suppress the answers to cross-interrogatories 10, 11 and 13. Interrogatory 11 is not in the abstract, and the ruling as to interrogatory 13 was correct.

Interrogatory 10 and answer are as follows:

"Then you do not know that the claim of indebtedness on which plaintiff brings this suit is for goods shipped to him, do you?

*Ans.* I only know the fact that the goods mentioned in exhibit F (of Ely's deposition) were shipped by plaintiff to defendant, McGinnis, but what the state of the account is at present, or what balance there may be due, I have no knowledge except what I hear from others."

That the defendants were disappointed in the answer we can readily·conceive, but we think such an answer might have been readily expected. In substance, the witness was asked, do you know the indebtedness on which this suit is based is for goods shipped, and the response is, the goods mentioned in exhibit "F" were shipped by plaintiff to defendant. This answer we think is clearly and directly responsive to the question, and the court erred in sustaining the motion to suppress.

VI. It is urged the guarantors on the bond gave the notice authorized by Sec. 2108 of the Code, and inasmuch as suit 5. GUARANTY: was not commenced in ten days thereafter, or a notice by guarantor. copy of the contract .furnished defendants to enable them to bring suit, it is claimed they are discharged. The following is the notice referred to:

"LAW AND COLLECTION OFFICE OF S. N. LINDLEY, }
NEWTON, IOWA, March 9, 1875. }

*Davis Sewing Machine Co., Gentlemen:* You have a bond signed by Ed. G. Fish, Peter Hays, Geo. Meyer and others, indemnifying your company for undertakings of John W. McGinnis, and common justice requires that these men thus bound should have a fair chance to secure themselves against loss. You have some notes aggregating about $213.33, and which they inform me can be collected if at once attended to, and if they had the proper means they could secure part at least from McGinnis himself. Please send the notes to your attorney for this district for collection. If you have no collector I would endeavor to collect as soon as possible. Also send me copy of the bond with authority to sue the principal and sureties both. This I suggest in behalf of the sureties, so that they may be sued in conjunction with McGinnis, and have an attachment against him, so that we can secure them from loss if possible. Your early attention to this will oblige.
                Yours respectfully,            S. N. LINDLEY."

Conceding that defendants can avail themselves of this letter written by Judge Lindley we think it does not comply with the statute. There was no request or notice to bring suit, but the plaintiff was requested to send the writer a

copy of the bond with *authority* to sue both principal and sureties. If this was intended as a statutory notice to sue, no authority was required in addition to a copy of the contract and bond. There was nothing like a request to sue, unless the plaintiffs authorized Judge Lindley to bring the suit. This is a condition that cannot be attached to a notice of this description, nor can there by any other or different condition or qualification than such as is contemplated by the statute. The difference between this notice and that in *First National Bank of Newton v. Smith*, 25 Iowa, 210, is quite apparent.

REVERSED.